## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

OTHEL L. COOKSEY, JR.,                    Case No. 1:07-cv-581
    Plaintiff

    vs                                    (Barrett, J.; Hogan, M.J.)

BOBBY MCELROY, et al.,                    **REPORT AND RECOMMENDATION**
    Defendants

       This matter is before the Court on the defendants' motions to dismiss (Docs. 22, 23, 27,

28, 41), motions to dismiss amended complaint (Docs. 35, 37, 43), motion for judgment on the

pleadings (Doc. 45), motions for sanctions (Docs. 34, 46), motion to strike the unauthenticated

court records, police reports and other documents filed by plaintiff in support of plaintiff's

amendment of complaint and answer to defendants (Doc. 40); plaintiff's "Amendment of

Complaint and Answer to Defendants" (Doc. 29), plaintiff's motions for immediate statutory

injunction and for hearing (Docs. 30, 31, 32, 47), plaintiff's "Answer to Defendants About

Sham/Deceitful Pleadings, Motions and practices related to A. Complaint Amend, B. Santions

(sic), C. Frivilous (sic) Suit, D. Immunity, E. Dismissal" (Doc. 39), plaintiff's motion for default

judgment (Doc. 48); and defendants' responsive and reply memoranda.

       Plaintiff Othel L. Cooksey, Jr. resides at 5683 Centerpoint Road in Georgetown, Ohio.

On July 26, 2007, he filed this pro se civil action against defendants Bobby McElroy, Ricky

McElroy, Scott T. Gusweiller, the Pleasant Township, Ohio Trustees, the Brown County, Ohio

Sheriff and Brown County Deputy John Doe, the Office of the Brown County Prosecutor, Brown

County, Ohio and the Brown County Commissioners, Judge Alan Corbin, Judge Thomas

Zachman, the State of Ohio, the Ohio Department of Health, and the United States Justice

Department. Mr. Cooksey's complaint alleges factual allegations that are virtually identical to a complaint filed by his sister, Marcia Fields, who also resides at 5683 Centerpoint Road in Georgetown. *See Marcia Fields v. Sheriff Deputy John Doe*, Case No. 1:06-cv-668 (S.D. Ohio)(Doc. 2). Both complaints allege that county, state, and federal officials failed to adequately investigate and take appropriate action in response to a series of racially charged incidents involving Ricky and Bobby McElroy, the Fields/Cooksey's next door neighbors.

In *Fields v. Doe*, Case No. 1:06-cv-668, a hearing on a motion for preliminary injunction and settlement conference were held before the undersigned Magistrate Judge on December 6, 2006. (Case No. 1:06-cv-668, Doc. 23). Ms. Fields, Mr. Cooksey, and Dora Jean Cooksey, their mother, were present and participated at the hearing and in the conference. Following that conference, Marcia Fields voluntarily dismissed the Brown County Health District and its agents and all claims against these defendants after settling the issues arising from Brown County's attempt to condemn the property at 5683 Centerpoint Road based on allegations concerning the septic system. (Case No. 1:06-cv-668, Doc. 31). A Court Order following that conference also noted that Ms. Fields "and the Cooksey/Fields Family also agree to hold harmless the Brown County Health Department/Brown County Health District and its Advisor Mr. Stephen L. Dick, Jr. from any claims for damages arising or growing out of the construction of improvements to the septic system on the Cooksey/Fields property, located at 5683 Centerpoint Road, Georgetown, Ohio 45121." (Case No. 1:06-cv-668, Doc. 31). Thereafter, by Order dated March 22, 2007, the Court granted the motions to dismiss of defendants Ohio Department of Health, State of Ohio, Brown County Common Pleas Court Judge Corbin (sued as "John Doe"), and the Brown County Court. (Case No. 1:06-cv-668, Doc. 37). On September 4, 2007, the Court denied

2

Ms. Fields' motion for summary judgment; granted the motion to dismiss of defendants Brown

County Sheriff's Office, Brown County Prosecuting Attorney's Office, and Brown County

Commissioners; and granted the motion for summary judgment of defendant Pleasant Township

Trustees. (Case No. 1:06-cv-668, Doc. 49).  The Court further dismissed sua sponte all claims

against the federal defendants, including an unknown FBI agent, the Federal Bureau of

Investigation, and the Department of Justice. *Id.*  Ms. Fields filed a notice of appeal to the Sixth

Circuit Court of Appeals.  That matter is still pending on appeal.

In the instant case, plaintiff Othel Cooksey's complaint names the same county, state, and

federal defendants as his sister's complaint[1] and names as additional defendants Bobby and

Ricky McElroy and Scott Gusweiller, the McElroy's one-time attorney.  Mr. Cooksey, an African

American, presents claims arising from the same history of alleged racial conflicts and threats by

next-door neighbors Bobby and Ricky McElroy over an ongoing boundary dispute.  Mr. Cooksey

asserts this case involves conspiracy, criminal activity, corruption, domestic terrorism and

treason. (Doc. 1 at 6).

## I.  Allegations of the complaint

The complaint alleges the following facts.  On December 7, 2002, Marcia Fields and

Othel Cooksey were held at gunpoint on their property by a group of white men, including Ricky

and Bobby McElroy.  After this incident, plaintiff alleges that he stood beside his sister while

Ms. Fields called the Brown County Sheriff's Office to report the incident.  Sheriff deputies

responded to the call but took no statement from Ms. Fields or Mr. Cooksey and advised them

---

[1]However, Mr. Cooksey does not name the Brown County General Health District or the Federal Bureau of
Investigation as defendants.

that the incident should be reported to the Game Warden. Plaintiff alleges that he, his sister, and his mother, Dora Jean Cooksey, made several contacts with the Brown County Sheriff's Office during the month of December 2002, but the Sheriff's Office failed to adequately investigate the incident or take appropriate action in response thereto. The complaint alleges "[t]here was no statement per the sheriff (sic) office on file from me. In fact, there were no statements/interviews from the prosecutor's office, FBI, or Justice Department. I've never been interviewed by the Sheriff's office or FBI or Justice Department all though (sic) each says they investigated this crime." (Doc. 1 at 5-6).

The complaint alleges that in January 2003, the McElroys met with the Pleasant Township Trustees about a fence problem between the McElroys and the Fields/Cooksey family. The Trustees said a boundary line should be checked by the surveyor before a fence could be built. The complaint alleges that neither plaintiff nor his family received notification about this.

The complaint further alleges that on January 12, 2003, two men, including Rick McElroy, returned to the Fields/Cooksey property and again threatened his family. When Ms. Fields called the 911 operator, she was told that Mr. McElroy was permitted on the property.

The following day, plaintiff and his family members met with Prosecutor Thomas Grennan about the December 7, 2002 and January 12, 2003 incidents and were told it was a "boundary issue."

On January 17, 2003, someone in the Fields/Cooksey family received a letter from the McElroy's attorney, Scott Gusweiller, "stating that his clients the McElroy[s] had been looking for 'pins' on December 7, 2002 and January 12, 2003, and that they could come down to the property and if we interfered they would involve the Sheriff's department." (Doc. 1 at 11).

4

The complaint states that on January 18, 2003, plaintiff and his family sent a letter to the Pleasant Township Trustees in response to the "threatening" letter from the McElroy's attorney.

On January 24, 2003, the County Prosecutor informed the Fields/Cooksey family that Mr. McElroy would be charged with criminal trespassing, but not more serious charges relating to the December 2002 incident.

On February 4, 2003, Rick McElroy met with the Pleasant Township Trustees to inform them he had the fence line surveyed and hired John Purdy to bull doze the line.  Plaintiff states he and his family were not notified of this action.

On March 10, 2003, two of the men involved in the previous incidents bull dozed a part of plaintiff's property.  The County Sheriff was contacted and filed a report for criminal trespass with damage.  The County Prosecutor was notified about the incident and informed the Field/Cooksey family there was nothing they could do about it.

In April 2003, in preparation for the criminal trespass trial, Ms. Fields was allegedly told by the assistant county prosecutor to limit her testimony and not to testify about the other incidents which occurred subsequent to the December 2002 incident.

The complaint alleges that the prosecutor's office made no mention of Mr. Cooksey as a "second victim" to the news media which reported on the December 2002 incident. (Doc. 1 at 12).

Plaintiff states that on May 8, 2003, he received a letter from the Pleasant Township Trustees notifying him of a fence line issue.[2]  Plaintiff states this was the first official notification

---

[2]The complaint states, "May 8th, 2003 (letter dated) sent to Plaintiff-First official notification of any 'fence-line' issue from the Pleasant Township Trustee's." (Doc. 1 at 16).  This allegation is identical to one contained in Ms. Fields' complaint in which she identifies herself as the "Plaintiff," the person to whom the letter was sent. (Case No. 1:06-cv-668, Doc. 2 at 17).  This is one of several examples where Mr. Cooksey's complaint repeats verbatim the allegations of Ms. Fields' complaint.

5

he received. Plaintiff also states that there was property damage from the bull dozing and subsequent flooding of the Fields/Cooksey property.

On May 14, 2003, plaintiff received an official notice from the Pleasant Township Trustees and the Prosecutor "about a fraudulent fence line issue" which included a request "to walk the property line with the gunmen who held you at gunpoint." (Doc. 1 at 12). The complaint states, "We refused in writing." (Doc. 1 at 12).

In May 2003, the Prosecutor's office ordered a survey of the incident site and requested plaintiff to mark the location of the perpetrators. Plaintiff states he was never contacted by the prosecutor's office for evidence "as a victim and witness." (Doc. 1 at 12).

On June 14, 2003, the Prosecutor tried "to force a walk of Plaintiff with Trustee's and McElroy's." (Doc. 1 at 13).

On August 12 and 13, 2003, the criminal trespassing trial of Ricky McElroy was held. Plaintiff alleges that the trial occurred in the Brown County Court (of Common Pleas) before Judge John Doe. The complaint alleges that the judge refused to serve a warrant upon the McElroys for the December 2002 incident; allowed racial slurs to be used freely in the courtroom; allowed the defense attorney to be a witness without being sworn in; allowed the defense attorney to lead witnesses; threatened plaintiff with a mistrial; and allowed members of jury to wink at the defendant openly. Plaintiff further alleges that the judge permitted the defense attorney to play a 911 call for the jury that was not authentic and was garbled. Plaintiff also alleges that the Prosecutor failed to follow up with witnesses during the trial.

6

The complaint also alleges that on August 24, 2003, two persons ran ATVs at plaintiff.[3] The Sheriff's office was called. The person who initially took the call refused to take a report from plaintiff until a supervisor was called.

Plaintiff alleges that in December 2003, hunters on his property shot over plaintiff and his sister's head. The Sheriff's office was called and a report taken. A December 6, 2003 report by Brown County Sheriff Deputy Sininger stated that a neighbor reported Ms. Fields was walking through woods and making noise in an attempt to scare deer away from hunters. The report states that the deputy suspected Ms. Fields of using alcohol and drugs.

In May 2004, racial slurs were carved into a picnic table at plaintiff's mother's place of employment. This was reported to the County Sheriff's department and the FBI.

On July 24, 2004, plaintiff, his sister, and mother were allegedly confronted by the McElroys when walking on their own property. They were accused of trespassing on the McElroy's property and the Sheriff's Department was called. The Sheriff's Deputy appeared to side with the McElroys over the incident and intimated in his report that the Fields/Cooksey family were trying to make the property dispute into "a racial thing." (Doc. 1 at 10).

Plaintiff states that on August 6, 2004, Ricky McElroy drove a tractor onto plaintiff's property towards plaintiff's mother. The complaint states the Sheriff's deputy failed to compile a report about this incident.

On August 21, 2004, the Prosecutor, on behalf of the Pleasant Township Trustees, wrote a "threatening" letter to plaintiff and his family about a proceeding with a partition fence. That

---

[3]Again, both the Fields complaint and Cooksey complaint contain identical allegations where both claim to be the sole victim/plaintiff in the alleged action.

7

same day, while putting up a fence on plaintiff's property, someone fired gunshots from the roadway.  The Sheriff's deputy reported that the shooter and direction of the shots were unknown.  The following day, a neighboring property owner informed plaintiff and his family that he was going to put a rifle range in front of plaintiff's home.

Plaintiff states that in September 2004, the Prosecutor, Trustees and McElroys met and decided to put up a fence without plaintiff or his family's knowledge.

On October 19, 2004, the Trustees and Prosecutor asked plaintiff for a meeting concerning the fence.

The complaint states that on November 2, 2004, a bullet came through plaintiff's kitchen window.  Sheriff's deputies responded, but stated that it was "not connected with all that been happening." (Doc. 1 at 10).  The complaint alleges that neither the Sheriff's Office nor Prosecutor's Office reported this incident to the news media and that "[t]he news is silent about this–TREASONOUS ACTS." (Doc. 1 at 14).

On February 1, 2005, the Prosecutor and Pleasant Township Trustees decided to go forward with the partition fence.

In March 2005, plaintiff filed a lawsuit for damages to the Fields/Cooksey property which occurred in March 2003.[4]

On March 24, 2005, the McElroys and others parked in front of plaintiff's house while drinking and yelling.  Plaintiff notified Deputy Dunn.

In April 2005, plaintiff observed three men in fatigues in plaintiff's creek at night.  That same month, a fence was built between the McElroy's and plaintiff's properties "per McElroy's,

---

[4]The complaint does not identify the forum in which the lawsuit was filed.

8

Prosecutor and Trustee" and "victims pay for a Treasonous execution." (Doc. 1 at 17). In addition, an agent from the Brown County General Health District came to plaintiff's home concerning a sump pump pipe.

On June 6, 2005, Sheriff's Deputy Hubbard and Stephen Dicks of the Brown County Health Board arrived at plaintiff's property with a search warrant obtained through the Prosecutor's office for the testing of plaintiff's septic tank. They asked plaintiff's mother and sister to sign the warrant, but they refused.

On June 28, 2005 and August 5, 2005, plaintiff received a notice of violation from the Health Board concerning his sewage disposal system.

On August 25, 2005, Scott Gusweiller, the attorney for the McElroys, filed for an injunction over raw sewage draining onto his client's property from plaintiff's property.

On August 26, 2005, plaintiff's sister met with Assistant Attorney General John Doe about the events described above. In September 2005, the Justice Department closed the case for "insufficient evidence or legal authority to support a violation of the federal criminal civil rights statutes." (Doc. 1 at 19).

On October 21, 2005, Sheriff Dwayne Wenninger arrived at plaintiff's home with the Health Board Commissioner and threatened to condemn plaintiff's home. On October 26, 2005, Deputy Hubbard and Stephen Dicks of the Health Board entered plaintiff's property through a closed gate and threw a letter on the ground informing plaintiff that his home had been condemned and that plaintiff and his family had 10 days to vacate the premises.

In November 2005, plaintiff met with the County Health Department and Prosecutor and came to an agreement to stop the condemnation proceedings. The complaint states that the

9

agreement was reached "under threats and pressure of loosing (sic) her home without and legal representation. . . ." (Doc. 1 at 15).

In June 2006, the Brown County General Health District sent a letter about fixing the septic system.

In July 2006, the Prosecutor's office sent a letter to the Fields/Cooksey family threatening the condemnation of their home.

The complaint states that on "December 6th, 2006 we still had to work out a deal with the same treasonous defendants to stop the condemnation of our home–even though it went against all Constitutional rights." (Doc. 1 at 15).[5]

Plaintiff filed this federal lawsuit on July 26, 2007. He alleges the foregoing actions violated his rights under federal and state law and seeks relief under Article I, Section 10, Article III, Section (1)(3), Article VI, and Article VII of the Constitution; the First, Fourth, Fifth, Ninth, Thirteenth and Fourteenth Amendments of the United States Constitution; 18 U.S.C. §§ 2, 3, 4, 201, 1621, 1985, 1986, 2331 and 42 U.S.C. §§ 241, 242. (Doc. 1 at 23-25). Plaintiff alleges that defendants' actions amount to domestic terrorism and treason against the United States. (Doc. 1 at 26). As relief, plaintiff seeks an injunction against defendants Brown County, Bobby and Ricky McElroy, Scott Gusweiller, and their families and agents; monetary compensation; and "[e]nforcement of State laws and Constitutional laws." (Doc. 1 at 34-36).

## II. Motion to Dismiss Standard

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which

---

[5]December 6, 2006 is the date that the undersigned held a settlement conference in *Fields v. Doe*, Case No. 1:06-cv-668 in an attempt to resolve the condemnation issue with the County Board of Health.

relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal for failure to state a claim for relief, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the plaintiff need not plead specific facts, his statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 127 S.Ct. 2197 (2007) (citations omitted).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974). *See also Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). In *Twombly*, the Supreme Court explained that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 127 S.Ct. at 1969.[6] The plaintiff's ground for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 405-06 (6th Cir. 1998) ("court need not accept as true legal conclusions or unwarranted factual inferences"). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."*Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88 (6th Cir. 1997) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)). "Factual allegations must be

---

[6]The *Twombly* Court made it plain that courts should no longer use the language of *Conley v. Gibson,* 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that which would entitle him to relief," when evaluating whether a complaint can withstand a dismissal motion. *Twombly,* 127 S.Ct. at 1968 (quoting *Conley,* 355 U.S. at 45-46).

11

enough to raise a right to relief above the speculative level[.]" *Twombly,* 127 S.Ct. at 1965

(citations omitted). While the complaint need not contain "heightened fact pleading of specifics,"

it must provide "enough facts to state a claim to relief that is plausible on its face" to survive a

motion to dismiss. *Twombly,* 127 S.Ct. at 1974.

**III. Defendants' motions to dismiss the amended complaint (Docs. 35, 37, 43) and motion to strike the unauthenticated court records, police reports and other documents filed by plaintiff in support of plaintiff's amendment of complaint and answer to defendants (Doc. 40) should be granted.**

In response to several of the defendants' motions to dismiss, Mr. Cooksey filed a

document entitled "Amendment of Complaint and Answer to Defendants." (Doc. 29). Because an

answer to the complaint had already been filed, Mr. Cooksey was not free to amend his complaint

without seeking leave of court, Fed. R. Civ. P. 15, which he failed to do. In any event, while the

amended complaint purportedly contains "additions, clarifications and amendments" (Doc. 29 at

1), Mr. Cooksey asserts that his "complaint stands as it was filed on July 26th, 2007" and a review

of the proposed amended complaint shows the "additions" are nothing more than argument and

opinion. (Doc. 29 at 1-5). Therefore, defendants' motions to dismiss the amended complaint

(Docs. 35, 37, 43) should be granted and the amended complaint should be stricken.

Defendant's motion to strike the unauthenticated court records, police reports and other

documents filed by plaintiff in support of his amendment of complaint and answer to defendants'

motions (Doc. 40) should also be granted. Attached to the purported amended complaint is an

"Affidavit of Evidence" and numerous documents submitted in support of plaintiff's amended

complaint. Included in these documents are copies of what purport to be public records,

correspondence to various officials from Marcia Fields and others, newspaper articles, documents

12

from state court cases involving plaintiff's family, and an "unofficial partial transcript" of proceedings in *State of Ohio v. Rick McElroy*, Case No. CRB 0202074. In his "Affidavit," Mr. Cooksey "affirms that the evidence contained herein is true." (Doc. 29). However, his "affidavit" is neither sworn to in front of an officer authorized to administer oaths, nor notarized and cannot constitute an "affidavit." *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002). Nor does the document amount to an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. Plaintiff's unsworn statement cannot suffice to authenticate the documents attached thereto or the videotapes submitted by Mr. Cooksey. *See Tdata Inc. v. Aircraft Technical Publishers*, Case Nos. 2:03-cv-264, 2:04-cv-1072 (S.D. Ohio 2007), 2007 WL 464411, *3; *Vanguard Transp. Sys., Inc. v. Volvo Trucks N. Am., Inc.*, Case No. 2:04-cv-889 (S.D. Ohio 2006), 2006 WL 2373273, *6.

In addition, the court records and police reports submitted by Mr. Cooksey are neither sworn nor certified. Mr. Cooksey has also submitted what purports to be a transcript of a state judicial proceeding. (Doc. 29, Exh. J). The "unofficial partial transcript" appears to have been transcribed by someone other than the official court reporter given the commentary interspersed throughout the transcript. For example, page 212 of the transcript states, "DISPATCHER: Conversation recorded on December 7, 2002 at 16:53 on Channel IV ... (THEN THE TAPE STARTED RUNNING FAST AND SOUNDED LIKE DONALD DUCK!)." (Doc. 29, Exh. J, Transcript at 212). Since these records, reports, and transcript have not been properly authenticated, they may not be considered by the Court. *See Fox v. Michigan State Police Dept.*, 173 Fed. Appx. 372, 375 (6th Cir. 2006), 2006 WL 456008, *2.

For these reasons, the motion to strike should be granted.

13

**IV. The Ohio defendants' motion to dismiss should be granted.**

The Ohio defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) alleging the Court

lacks subject matter jurisdiction over the claims against them. Plaintiff bears the burden of

proving jurisdiction in order to survive a motion to dismiss on grounds of lack of subject matter

jurisdiction. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *Michigan*

*Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.*, 287 F.3d 568, 573

(6th Cir. 2002); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th

Cir. 1990). "In reviewing a 12(b)(1) motion, the court may consider evidence outside the

pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to

supplement the record by affidavits." *Nichols*, 318 F.3d at 677 (citing *Rogers v. Stratton*

*Industries*, 798 F.2d 913, 916 (6th Cir. 1986)). "[W]here a defendant argues that the plaintiff has

not alleged sufficient facts in [his] complaint to create subject matter jurisdiction, the trial court

takes the allegations in the complaint as true." *Nichols*, 318 F.3d at 677 (citing *Jones v. City of*

*Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999)).

The Court finds the motion well-taken and recommends that the complaint against the

Ohio defendants be dismissed because the State of Ohio and the Ohio Department of Health are

immune from suit in this federal court.

Absent an express waiver, the Eleventh Amendment to the United States Constitution bars

suit against a State or one of its agencies or departments in federal court regardless of the nature

of the relief sought. *Pennhurst State School v. Halderman*, 465 U.S. 89, 100 (1984); *Alabama v.*

*Pugh*, 438 U.S. 781, 782 (1978); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). The State of

Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment rights. *See State*

14

*of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976), *cert. denied*, 430 U.S. 946 (1977); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Likewise, the complaint against the Ohio Department of Health should be dismissed because the Department is an agency of the State which is also immune from suit in federal court. *See Pennhurst State School*, 465 U.S. at 100; *Alabama v. Pugh*, 438 U.S. at 782. Finally, the Eleventh Amendment prohibits a federal court from awarding monetary or injunctive relief for alleged violations of state law asserted against a State or its agencies. *Pennhurst State School*, 465 U.S. at 103-106. *See also State of Ohio, ex rel Manuel v. Ohio Dept. Of Health*, 810 F. Supp. 928 (S.D. Ohio 1992). Therefore, plaintiff's claims for monetary and injunctive relief against the State of Ohio and the Ohio Department of Health should be dismissed.[7]

## V. The Federal defendant's motion to dismiss should be granted.

Plaintiff alleges that defendant Justice Department failed to adequately investigate the Field/Cooksey family's complaints of wrongdoing by the McElroys and others. Plaintiff was notified in September 2005 that the case was closed because there was "insufficient evidence or legal authority to support a violation of the federal criminal civil rights statutes." (Doc. 1 at 19). Plaintiff names the United States Department of Justice as the sole federal defendant in this matter.

Plaintiff's claims against defendant Department of Justice are barred by the doctrine of

---

[7]Because plaintiff's claims against the Ohio defendants are barred by the Eleventh Amendment, the Court need not reach defendants' alternative contention that plaintiff's complaint fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6). *See Nair v. Oakland County Community Mental Health Authority*, 443 F.3d 469 (6th Cir. 2006).

sovereign immunity and must be dismissed. It is well settled that the United States may not be

sued without its consent under the doctrine of sovereign immunity. *See United States v. Mitchell,*

445 U.S. 535, 538 (1980); *Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002). Plaintiff's

complaint against the Department of Justice is in effect a suit against the United States as the

relief sought would in fact operate against the United States. *See Dugan v. Rank*, 372 U.S. 609,

620 (1963); *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963); *Blakely v. United States*, 276 F.3d 853,

870 (6th Cir. 2002). "A waiver of the Federal Government's sovereign immunity must be

unequivocally expressed in statutory text and will not be implied." *Lane v. Pena,* 518 U.S. 187,

192 (1996). "'[T]he circumstances of [the waiver of sovereign immunity] must be scrupulously

observed and not expanded by the courts.'" *Blakely*, 276 F.3d at 864 (quoting *Kokotis v. United

States Postal Serv.,* 223 F.3d 275, 278 (4th Cir. 2000)). Absent an explicit waiver of sovereign

immunity by statute, suits against the government or its agents must be dismissed. *Loeffler v.

Frank*, 486 U.S. 549, 554 (1988); *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

The burden is on plaintiff to "identify a waiver of sovereign immunity in order to proceed

against the United States. If he cannot identify a waiver, the claim must be dismissed on

jurisdictional grounds." *Reetz v. U.S.*, 224 F.3d 794, 795 (6th Cir. 2000) (citing *Dalehite v.

United States,* 346 U.S. 15, 30 (1953)). In this regard, plaintiff points to the Federal Tort Claims

Act, the Fifth and Fourteenth Amendments of the United States Constitution, and Article VI (2) of

the Constitution. (Doc. 1 at 30). None of these provisions of the law supply a waiver of sovereign

immunity in this case.

To the extent plaintiff's complaint alleges violations of his constitutional rights by the

federal defendant, neither the Constitution nor 28 U.S.C. § 1331 acts as a waiver of sovereign

immunity. *Reed v. Reno*, 146 F.3d 392, 397 (6th Cir. 1998). Likewise, 28 U.S.C. § 1343, the jurisdictional statute over civil rights actions, does not constitute a waiver of the United States' sovereign immunity. *See Wright v. State*, Case No. 1:05-cv-18 (S.D. Ohio Sept. 29, 2006) (Weber, J.), 2006 WL 2850508, *7 (and cases cited therein). Nor does 28 U.S.C. § 1361, the statute authorizing mandamus actions against federal officials, waive the sovereign immunity of the United States. *Hartman v. Alliance Mortgage Co.*, 1999 WL 777309, *2 (6th Cir. 1999) (citing *Bobula v. United States Dept. of Justice*, 970 F.2d 854, 860 (Fed. Cir. 1992); *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3-4 (1st Cir. 1989)).

To the extent plaintiff may be seeking a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, no separate waiver of sovereign immunity is needed and the district court may take jurisdiction to determine if a clear duty is owed to the plaintiff. *Coal Operators and Associates, Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002). Mandamus is proper only where the defendant owes the plaintiff a "clear nondiscretionary duty" that it has failed to perform. *Your Home Visiting Nurse Services, Inc. v. Secretary of Health and Human Services*, 132 F.3d 1135 (6th Cir. 1997), *aff'd*, 525 U.S. 449 (1999) (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). In the instant case, plaintiff fails to establish that defendant Justice Department owed him a clear nondiscretionary duty to investigate and prosecute his or his family's complaints. "The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws," including the discretion whether or not to file charges and prosecute. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985) (further quotation omitted)). Mandamus is not available to compel the Attorney General or United States Attorney to prosecute known civil rights violators, to alter the

17

scope of their investigations, and to conduct particular investigations since the investigation and institution of a criminal prosecution falls within their discretion. *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970). *See also Otero v. U.S. Atty. General*, 832 F.2d 141 (11th Cir. 1987) (holding writ of mandamus could not issue to compel investigation and prosecution of former Florida state attorney); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) (decision to initiate a criminal investigation is left within the FBI's discretion); *Whittle v. Moschella*, 756 F. Supp. 589, 597 (D.D.C. 1991) (dismissing plaintiff's mandamus action against Department of Justice and Federal Bureau of Investigation because neither agency, nor any other official or agency of United States owed plaintiff a nondiscretionary duty to investigate brother's death). Therefore, plaintiff is not entitled to a writ of mandamus against the federal defendant.

Plaintiff's complaint also fails to state a claim for relief against the federal defendant under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. Neither the federal government nor its agencies may be sued under RICO. *See Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991).

To the extent plaintiff's complaint may be alleging a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 et seq., that claim must also be dismissed. The Federal Tort Claims Act grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment. *See* 28 U.S.C. § 2675(a). Actions brought pursuant to the FTCA must be brought against the United States of America and not in the name of the allegedly negligent agency, entity or employee. 28 U.S.C. §§ 2671-2680; 28 U.S.C. § 1346(b). *See Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990). Because plaintiff does not name the United States as a defendant, his complaint fails to

18

state a claim for relief under the FTCA.

In any event, plaintiff's FTCA claim must be dismissed because plaintiff fails to allege any facts showing he exhausted his administrative remedies prior to bringing suit in federal court. Exhaustion of administrative remedies is a prerequisite to federal jurisdiction over an FTCA claim.[8] *See* 28 U.S.C. § 2675; *Joelson v. United States*, 86 F.3d 1413, 1422 (6th Cir. 1996); *Garrett v. United States*, 640 F.2d 24, 25 (6th Cir. 1981).

Finally, even if the Court were to construe plaintiff's complaint as alleging a constitutional tort claim pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the claim against defendant Justice Department is subject to dismissal because a *Bivens* action can only be brought against a federal agent or employee, and not a federal agency. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994).

For these reasons, plaintiff's claims against defendant Justice Department should be dismissed.

## VI. The Judicial defendants' motion to dismiss should be granted.

Defendants Judge Alan Corbin of the Brown County Court of Common Pleas and Judge Thomas Zachman, retired judge of the Brown County Municipal Court (see Doc. 28 at 2), also seek dismissal of the complaint. The complaint alleges that "Judge John Doe," who presided over the criminal trespass prosecution of Ricky McElroy, refused to serve a warrant upon the McElroys for the December 2002 incident; allowed racial slurs to be used freely in the courtroom; allowed

---

[8]The federal defendant presents the Declaration of Michael E. Brooks, Chief Division Counsel for the Cincinnati Field Division of the Federal Bureau of Investigation, which avers that plaintiff has failed to initiate the administrative process by presenting a claim to the FBI. (Doc. 27, Exh. 1).

the defense attorney to be a witness without being sworn in; allowed the defense attorney to lead witnesses; threatened plaintiff with a mistrial; and allowed members of jury to wink at the defendant. The complaint also alleges that the judge permitted the playing of a 911 tape that was not properly authenticated and difficult to understand. Defendants have submitted a certified copy of the docket sheet in *State of Ohio v. McElroy*, Brown County Municipal Court, Case No. CRB 0202074, which shows that Judge Zachman presided over the trial in Municipal Court.

In the instant case, plaintiff's complaint against Judge Corbin should be dismissed because the complaint fails to state a claim upon which relief may be granted in this federal court. The complaint alleges no facts showing Judge Corbin took any actions to violate plaintiff's rights. In the absence of any factual allegations whatsoever implicating Judge Corbin in the misdeeds alleged in the complaint, the complaint against Judge Corbin must be dismissed.

The complaint against Judge Zachman must also be dismissed because judges are afforded absolute immunity from damages for acts they commit while functioning within their judicial capacity. *Pierson v. Ray,* 386 U.S. 547 (1967); *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997), *cert. denied*, 523 U.S. 1075 (1998). Judges retain absolute immunity from liability even if they act maliciously or corruptly, as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them. *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). *See also Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001); *King v. Love,* 766 F.2d 962 (6th Cir.), *cert. denied,* 474 U.S. 971 (1985). It is clear that Judge Zachman's actions in refusing to serve a warrant upon the McElroys for the December 2002 incident, permitting racial slurs in the courtroom, allowing the defense attorney to be a witness without being sworn in, allowing the defense attorney to lead witnesses, threatening plaintiff with a mistrial, allowing

20

members of jury to wink at the defendant openly, and permitting the playing of the 911 tape were

judicial acts, *i.e.*, functions normally performed by a judge. *Stump*, 435 U.S. at 362; *Bodell v.*

*McDonald*, 4 Fed. Appx. 276 (6th Cir.)(unpublished), 2001 W.L. 137557, *cert. denied*, 121 S.Ct.

2595 (2001). *See also Benson v. O'Brien*, 67 F. Supp.2d 825  (N.D. Ohio 1999) (issuance of a

warrant falls within the realm of "judicial acts").  In addition, plaintiff has not alleged facts

indicating that Judge Zachman acted "in the complete absence of all jurisdiction." *Stern*, 262 F.3d

at 607.  Therefore, defendant Zachman is absolutely immune from civil liability in this matter.

In addition, the judicial immunity doctrine, as modified by the 1996 Federal Court

Improvement Act, bars plaintiff's claim for injunctive relief against defendant Zachman.[9]  Judge

Zachman is entitled to the full protection of the immunity doctrine because the requested relief is

premised on alleged misconduct stemming from the performance of his judicial duties during

Ricky McElroy's criminal trespass trial.  *See Massey v. Stosberg*, 136 Fed. Appx. 719, 720 (6th

Cir. 2005 ( "injunctive relief shall not be granted"  in an action brought against "a judicial officer

for an act or omission taken in such officer's judicial  capacity ... unless a declaratory decree was

violated or declaratory relief was unavailable.") (citing 42 U.S.C. § 1983 (2003); *accord Montero*

*v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)).  *See also Gilbert v. Ferry,* 298 F. Supp.2d 606, 612

(E.D. Mich. 2003) (citing *Ackermann v. Doyle,* 43 F. Supp.2d 265, 271-72 (E.D.N.Y. 1999)

(finding New York Supreme Court Justice absolutely immune from injunctive relief based on

decisions made while presiding over state court action)).  Therefore, plaintiff's claims for

injunctive relief must be dismissed on the ground of absolute judicial immunity.

---

[9]It is not clear what injunctive relief plaintiff seeks against Judge Zachman given that the trespass trial against Mr. McElroy was concluded over five years ago in 2003.

In any event, plaintiff's claims against the judicial defendants are barred by the two-year statute of limitations applicable to his civil rights claims. The statute of limitations for §§ 1983 and 1985 claims in Ohio is two years, as provided in Ohio Rev. Code § 2305.10. *See Tolbert v. State of Ohio Dept. of Transp.,* 172 F.3d 934, 939 (6th Cir. 1999) (section 1983); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (section 1983); *Harris v. Board of Educ.*, 798 F. Supp. 1331, 1345 (S.D. Ohio 1992) (and cases cited therein) (section 1985). The statute of limitations for § 1986 claims is one year. *Harris v. City of Canton, Ohio*, 725 F.2d 371, 375 n.4 (6th Cir. 1984). The statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of his action. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

In the instant case, plaintiff's cause of action, if any, against the judicial defendants accrued on August 12 and 13, 2003, the dates of the criminal trespass trial. The statute of limitations expired on August 13, 2004, for plaintiff's § 1986 claim, and on August 13, 2005, for his §§ 1983 and 1985 claims. Thus, plaintiff's complaint which was filed on July 26, 2007 is time-barred unless the action complained of constitutes a continuing violation that extends the limitation period.

The Sixth Circuit applies a three-part test to determine whether a continuing violation exists. First, the wrongful conduct must continue after the precipitating event; second, the injury must continue to accrue after that event; and, third, further injury must be avoidable if the defendant ceases the wrongful conduct. *Tolbert*, 172 F.3d at 940, citing *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997).

In this case, the allegations against the judicial defendants fail to satisfy this test. The

22

criminal trespass trial is a discrete event that took place in 2003. Plaintiff fails to allege any facts

showing any further wrongful conduct or actions on the part of the judicial defendants which

allegedly violated his rights. "A continuing violation is occasioned by continual unlawful acts,

not continual ill effects from an original violation." *Tolbert,* 172 F.3d at 940, quoting *National*

*Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991). Accordingly, plaintiff's

claims against the judicial defendants do not constitute a continuing violation, are barred by the

applicable statute of limitations, and should be dismissed.

## VII. The County defendants' motion to dismiss should be granted.

Defendants Brown County Sheriff, Brown County Sheriff Deputies, Brown County

Prosecuting Attorney's Office, Brown County, and Brown County Commissioners seek dismissal

of the complaint or judgment on the pleadings on the basis of absolute and qualified immunity, for

failure to assert any facts or claims against the Brown County Commissioners, and, in the

alternative, for failure to join necessary parties under Fed. R. Civ. P. 19. (Doc. 41). Plaintiff has

failed to file a memorandum opposing the County defendants' motion to dismiss. For the reasons

that follow, the County defendants' motion to dismiss should be granted.

### A. The Brown County Prosecutor's Office is Entitled to Absolute Immunity With Respect to the Initiation and Execution of Trial Proceedings against Ricky McElroy.

Plaintiff's complaint against defendant Brown County Prosecutor's Office  must be

dismissed because it seeks relief from a defendant who is immune from such relief. The courts

use a "functional" analysis to determine if a public prosecutor is entitled to absolute or qualified

immunity from civil rights claims based on acts taken under color of state law. *Buckley v.*

*Fitzsimmons*, 509 U.S. 259 (1993). While a public prosecutor is generally entitled to absolute

23

immunity when acting as the state's advocate, investigative or administrative acts may not be absolutely immune under the functional approach, necessitating qualified immunity review.

"Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" *Manetta v. Macomb County Enforcement Team*, 141 F.3d 270, 274 (6th Cir. 1998) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). This includes a county prosecutor's initiation of a prosecution and presentation of the State's case at trial. *Imbler*, 424 U.S. at 431. *See also Jones v. Shankland,* 800 F.2d 77, 80 (6th Cir. 1986), *cert. denied* 481 U.S. 1048 (1987). A prosecutor is entitled to absolute immunity when obtaining and executing a search warrant because such actions are taken in preparation for the initiation of judicial proceedings. *Lomaz v. Hennosy*, 151 F.3d 493, 497, 499 (6th Cir. 1998). Absolute immunity also extends to a prosecutor's decision whether and against whom to bring charges. *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997). Courts have consistently recognized that even the knowing presentation of false testimony to a trial jury are actions protected by absolute immunity. *See Spurlock v. Thompson,* 330 F.3d 791, 797-98 (6th Cir. 2004). *See also Imbler,* 424 U.S. at 413, 430; *Buckley,* 509 U.S. at 267 n. 3. Such "absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously." *Lomaz,* 151 F.3d at 498 n. 7.

Plaintiff's complaint alleges that the Brown County Prosecutor (1) refused to bring more serious charges against the McElroys after the December 2002 incident; (2) conspired with the McElroys and the state court judge to deprive plaintiff of a fair trial on the trespass charge; (3) insisted that plaintiff attend a fence line meeting called by the Township Trustees; (4) conspired with the Trustees and others to unfairly burden plaintiff with the costs of the partition fence; (5) conspired with the McElroys and other county defendants to condemn plaintiff's property; and (6)

24

refused to prosecute or adequately investigate additional incidents of harassment.

The Prosecutor's actions surrounding the initiation and execution of the criminal trespass case against Ricky McElroy are protected by absolute immunity since such actions are intimately associated with the judicial phase of the criminal process. "The same conclusion applies to the prosecutor's representation of the Township Trustees in performing their mandatory duties concerning the partition fence, and to any involvement the prosecutor may have had in prosecuting the Health Department's condemnation proceedings." *Fields v. Doe*, Case No. 1:06-cv-668 (S.D. Ohio Sept. 4, 2007) (Doc. 49 at 13). Therefore, these claims against the Brown County Prosecutor must be dismissed.

To the extent the complaint alleges additional wrongdoing by the Brown County Prosecutor, such claims are barred by qualified immunity as explained below.

**B. The County Prosecutor, Sheriff and Deputies are Entitled to Qualified Immunity for their Investigative Acts.**

Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Black v. Parke*, 4 F.3d 442, 444 (6th Cir. 1993), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). Whether an official is entitled to qualified immunity is "a threshold question to be resolved at the earliest possible point in the proceedings." *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003) (citing *Harlow*, 457 U.S. at 818). *See also Saucier*, 533 U.S. at 201.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two

pronged analysis: (1) "Taken in the light most favorable to the party asserting the injury, do the

facts alleged show the [defendant's] conduct violated a constitutional right?" and, if so, (2) Was

the right clearly established? *Saucier*, 533 U.S. at 201.

A constitutional right is "clearly established," thereby precluding the application of

qualified immunity, if "the law [is] clear in regard to the official's particular actions in the

particular situation." *Black*, 4 F.3d at 445, quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.),

*cert. denied*, 502 U.S. 863 (1991). *See also Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.), *cert.*

*denied*, 516 U.S. 991 (1995). "The contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S.

at 202, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant, dispositive

inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable [official] that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S.

at 202.

In the instant case, the complaint alleges that the Brown County Prosecutor and Brown

County Sheriff and Deputies failed to adequately investigate plaintiff's complaints of racial

harassment, trespassing, and intimidation by the McElroys and others. Mr. Cooksey alleges that

the County Prosecutor's Office failed to contact him for information as a victim and a witness;

that the County Sheriff's Office and Prosecutor's Office failed to initiate meetings with him as

"the second victim" and failed to relay certain incidents to the news media; that neither the Sheriff

nor Prosecutor have a report showing they spoke with him about the December 2002 incident and

"subsequent crimes;" and that both failed to adequately respond to and investigate complaints of

26

their neighbors' harassment, trespassing, and intimidation.

The first question the Court must address is whether plaintiff has alleged facts showing that the County defendants' actions violated a constitutional right. *Saucier*, 533 U.S. at 201. As previously indicated, plaintiff has failed to respond to the County defendants' motion to dismiss and therefore has not articulated any basis to rebut defendants' qualified immunity defense. Nevertheless, based on the facts alleged by plaintiff, which are the same as those alleged by his sister in *Fields v. Doe*, Case No. 1:06-cv-668 (S.D. Ohio), the Court finds Chief Judge Beckwith's analysis of the qualified immunity defense raised in that case to be persuasive.

In *Fields*, Chief Judge Beckwith assumed for purpose of the analysis that Ms. Fields' allegations of harassment, intimidation and fear of harm from private citizens constituted a constitutional violation. However, the allegations, taken as a whole, did not show that the County defendants "injured Plaintiff or her family." *Fields v. Doe*, Case No. 1:06-cv-668 (S.D. Ohio Sept. 4, 2007) (Doc. 49 at 15). The undersigned adopts Judge Beckwith's reasoning as set forth below.

In *Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006), the Sixth Circuit observed that "Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 690 (quoting *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989)). Two exceptions to the *DeShaney* rule exist. The first is when the State has created a special relationship with an individual by restraining that individual's freedom, typically applied to people in state custody.

The first *DeShaney* exception does not apply here because Mr. Cooksey does not allege any facts indicating his liberty was somehow restrained by any of the County defendants. Accepting the allegations of the complaint as true, Mr. Cooksey was not inhibited in his ability to

27

care for himself and, therefore, no affirmative duty arose on the part of the County defendants

under *DeShaney*.

The second DeShaney exception is the "state created danger" doctrine. As recently

explained by the Sixth Circuit:

> [T]he state created danger doctrine . . . is properly understood as a caveat to the
> color of state law requirement. 'In other words, while the state does not shoulder an
> affirmative duty to protect its citizens from acts of violence, it may not cause or
> greatly increase the risk of harm to its citizens without due process of law through
> its affirmative acts.' *Kallstrom,* 136 F.3d at 1066. As indicated by *Kallstrom,* state
> created danger is not predicated upon but-for causation; rather it is more akin to the
> notion of proximate causation. Our cases have spoken in terms of 'creating risk' or
> 'greatly increasing risk,' rather than in terms of 'causing harm.' Thus, we have
> developed a three-part test: 'an affirmative act that creates or increases the risk, a
> special danger to the victim as distinguished from the public at large, and the
> requisite degree of state culpability.' *McQueen v. Beecher Comty. Schs.,* 433 F.3d
> 460, 464 (6th Cir. 2006). As to the first part, we have noted that the increase in
> risk must be substantial. *See, e.g., Summar v. Bennett,* 157 F.3d 1054, 1059 n. 2
> (6th Cir. 1998). As to the third, the requisite culpability in this circumstance, i.e.
> one that 'provide[d] opportunity for reflection and unhurried judgments,'
> *McQueen,* 433 F.3d at 469, is deliberate indifference.

*Barber v. Overton,* 496 F.3d 449, 453-54 (6th Cir. 2007). To properly establish a state-created

danger claim, Mr. Cooksey must allege facts showing (1) an affirmative act by a state actor that

creates or increases a risk that Mr. Cooksey would be exposed to private acts of violence, (2) a

special danger to Mr. Cooksey, and (3) that the County defendants knew or should have known

that the acts specifically endangered Mr. Cooksey. *McQueen v. Beecher Community Schools*, 433

F.3d 460, 464-469 (6th Cir. 2006); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.

1998).

The allegations of the complaint fail to show that the County defendants affirmatively

acted in a manner that created or increased Mr. Cooksey's risk of exposure to private acts of

28

violence. Mr. Cooksey's allegations center around the Sheriff's, Sheriff Deputies', and Prosecutor's inaction–their failure to adequately investigate the alleged incidents of harassment and intimidation. As discussed above, Mr. Cooksey identifies himself as the "second victim" and "witness" to the December 2002 incident and other incidents which allegedly followed. He states that the Sheriff's Office and Prosecutor's Office did not contact him about the incidents and did not compile any reports based on his knowledge and experience as a victim/witness. Mr. Cooksey also alleges that these defendants failed to relay information to the news media concerning the alleged incidents of harassment and intimidation.

As the Sixth Circuit in *Jones* recognized, the issue of whether governmental conduct should be treated as a failure to act or as an affirmative act may be abstractly difficult in some cases. The Sixth Circuit, however, has "always treated governmental conduct as falling on the inaction side of the line when it does not create or increase the risk of peril posed by the private actor." *Jones*, 438 F.3d at 692 (internal citations and quotations omitted). The Sixth Circuit has repeatedly determined that inaction, or a failure to prevent harm, is insufficient to establish liability under the second *DeShaney* exception. *See, e.g., McQueen v. Beecher Community Schools*, 433 F.3d 460, 464-469 (6th Cir. 2006) (teacher left student with known violent tendencies alone in a classroom with other students, and student shot and killed another student; teacher did not increase victim's risk of harm); *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728-30 (6th Cir. 2005) (city's failure to respond to parents' complaints about non-enforcement of speed limit before their child was killed by speeding car was not an affirmative act); *Cartwright v. City of Marine City*, 336 F.3d 487, 493-494 (6th Cir. 2002) (police offered man who was walking along shoulder of a dark two-lane highway a ride, then dropped him off in a convenience store

29

parking lot when they picked up a prisoner; the man later wandered two miles onto a highway and was killed; police took no "affirmative act" subjecting them to Section 1983 liability); *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003) (police not liable when they returned a mentally disabled woman to home of man who previously assaulted her, and who then raped her); and *Jones v. Union County*, 296 F.3d 417, 431 (6th Cir. 2002) (failure to serve ex parte order of protection on an abusive spouse not an affirmative act, despite lengthy record of complaints to police about abusive spouse's conduct).

In this case, Mr. Cooksey has failed to allege particular facts showing that the Brown County Sheriff's Office or the County Prosecutor's Office affirmatively acted in a manner that created or increased any risk that Mr. Cooksey faced from private actors. The Sixth Circuit has rejected the theory that police officers' "failure to act" in response to victim complaints about a specific individual emboldened that individual to commit a criminal act, thus transforming inaction into affirmative action. *See, e.g., Brooks v. Knapp*, 221 Fed. Appx. 402 (6th Cir. 2007), 2007 WL 725741 (rejecting claim that police officers increased decedent's vulnerability to danger when they failed to detain her ex-spouse, who had threatened her on several occasions and was in police custody the night of her murder. Police released the ex-spouse without warning decedent, and he then broke into her home and killed her). In the absence of specific facts showing an affirmative act that created or increased a risk of injury from private citizens, Mr. Cooksey's complaint fails to meet the "state created danger" exception set forth in *DeShaney*. As such, Mr. Cooksey has failed to meet his burden under the first prong of the qualified immunity analysis. Thus, the claims against the Brown County Sheriff, Sheriff Deputies, and Prosecutor are barred by qualified immunity.

30

**C. The Claims Against Brown County and the Brown County Commissioners Should be Dismissed.**

Plaintiff's complaint against defendant Brown County Commissioners in their official capacities is in reality an official capacity suit against Brown County, the entity of which defendants are agents. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). *See also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Plaintiff's complaint fails to state a claim for relief against the Commissioners or Brown County because counties are not vicariously liable for the actions of their employees under Section 1983. "It is firmly established that a . . . county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000), citing *Monell*, 436 U.S. at 694. To state a claim for relief against Brown County for his injuries, plaintiff must allege that "those injuries were the result of an unconstitutional policy or custom of the County." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). *See Monell*, 436 U.S. at 694; *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). *See also Polk County v. Dodson*, 454 U.S. 312 (1981) (municipal policy must be "moving force" behind constitutional deprivation). A county cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).

Plaintiff's complaint fails to allege any facts showing that the other County defendants acted pursuant to a policy or custom of Brown County in failing to adequately investigate or respond to plaintiff's complaints. Plaintiff's § 1983 claim against Brown County and its Commissioners is based on a theory of respondeat superior. Therefore, plaintiff's complaint fails

31

to state a claim upon which relief may be granted and should be dismissed as to Brown County
and the Brown County Commissioner's in their official capacities.

To the extent plaintiff names the County Commissioners in their individual capacities, the
complaint fails to allege any facts whatsoever on the part of the individual commissioners
showing any wrongdoing or participation in the conduct of the other defendants. Therefore, the
individual capacity claims against the Brown County Commissioners must also be dismissed.

## VIII. The County defendants' alternative request for dismissal based on plaintiff's failure to join persons needed for just adjudication under Fed. R. Civ. P. 19 should be denied, but raises related questions concerning claim preclusion.

In the event this Court does not dismiss Mr. Cooksey's claims on the merits, the County
defendants request that the Court dismiss Mr. Cooksey's claims for his failure to join persons
needed for just adjudication under Fed. R. Civ. P. 19. Defendants contend that numerous other
Cooksey/Fields family members, including Dora Jean Cooksey, Paul Cooksey, a brother of Othel
Cooksey, Jr., and anyone else Mr. Cooksey considers "the family" who are mentioned as being
involved in the offending actions, should be joined in this case as necessary parties because they
"claim an interest relating to the subject of the action and [are] so situated that the disposition of
the action in the person's absence may . . . (ii) leave any of the persons already parties subject to a
substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of
the claimed interest." *Soberay Mach. & Equipment Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 764 (6th
Cir. 1999) (citing Rule 19(a)). Defendants assert that the likelihood that these other Fields/
Cooksey family members will become future litigants against the County Defendants is not
merely speculative given the conduct exhibited in this Court by Othel Cooksey, Jr. and Marcia
Fields to date. (Doc. 41 at 15).

32

As discussed in Section VII, the undersigned recommends that Mr. Cooksey's complaint be dismissed on the merits as to the County defendants. Therefore, the Court need not reach the County defendants' alternative argument for dismissal based on Rule 19. Nevertheless, the County's alternative request raises a troubling issue facing the Court by Mr. Cooksey's filing of a complaint which is virtually identical to that of his sister Marcia Fields and by any other complaints which may be filed by other members of the Fields/Cooksey family in the future, *i.e.,* the issue of *res judicata.*

Under the doctrine of *res judicata*, or claim preclusion, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, n. 5 (1979); *Gargallo v. Merrill Lunch, Pierce, Fenner & Smith*, 918 F.2d 658, 660-61 (6th Cir. 1990). The doctrine of *res judicata* protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. U. S.*, 440 U.S. 147, 153-154 (1979). *Res judicata* "precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit." *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003), citing *Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir. 2001); *Gargallo,* 918 F.2d at 660-61. *See also Federated Department Stores, Inc., v. Moitie*, 452 U.S. 394, 398 (1981)(*res judicata* prevents the "relitigating of issues that were or could have been raised in [a prior] action."). The Court considers four issues in determining whether claim preclusion applies: (1) whether the prior decision was a final decision on the merits; (2) whether the present action is between the same parties or their privies as those to the prior action; (3) whether the claim in a

33

present action should have been litigated in the prior action; and (4) whether an identity exists

between the prior and present actions. *Mitchell*, 343 F.3d at 819; *Kane v. Magna Mixer Co.*, 71

F.3d 555, 560 (6th Cir. 1995), *cert. denied*, 517 U.S. 1220 (1996). When all issues are answered

in the affirmative, claim preclusion applies to bar the subsequent lawsuit. *Id.*

As noted above, Mr. Cooksey's complaint is virtually identical to that filed by his sister,

Marcia Fields in *Marcia Fields v. Sheriff Deputy John Doe*, Case No. 1:06-cv-668 (S.D. Ohio)

(Doc. 2). Although Mr. Cooksey's complaint contains additional information, such as citations to

historical documents, statutes, and case law, the essential facts underlying his claims are identical

to those of Ms. Fields. A review of the complaint and the documents submitted by Mr. Cooksey

strongly suggests that the filing of his complaint may be nothing more than an attempt to obtain

another review of the claims raised and lost by Ms. Fields in her lawsuit.[10] As the defendants

have noted in their motions for sanctions, Mr. Cooksey was on notice that his claims lacked merit

by virtue of the Court's rulings against his sister in *Marcia Fields v. Sheriff Deputy John Doe*,

Case No. 1:06-cv-668 (S.D. Ohio), yet he chose to continue with this litigation. The Court also

shares the concern raised by defendants that a ruling against Mr. Cooksey in this matter will

nevertheless prompt additional lawsuits by Field/Cooksey family members. In fact, in a document

entitled "Answer to Defendants About Sham/Deceitful Pleadings, Motions and practices related

to" filed by Mr. Cooksey (Doc. 39), Mr. Cooksey states:

> Be informed that the victimization took place to my whole Family, so others
> experienced almost the same thing personally. Thus all the evidence applies to

---

[10]For example, Mr. Cooksey's proposed amended complaint states, "As the evidence shows, especially that presented by myself and Marcia Fields as living victims, and witnesses to crimes not only against ourselves but against our country, which have generated great injuries and just cause." (Doc. 29 at 2). His "Affidavit of Evidence" states that "[t]he evidence includes first and foremost myself as victim, witness and Marcia Fields as victim/witness" and includes evidence previously submitted in Ms. Fields' case. (Doc. 29, "Affidavit" and attachments).

them as well, and *two will be filing additional law suits*–since their experience has been that these defendants continue to violate our Civil Rights under the Civil Rights Act of 1866 even while the case is in Federal Court.

(Doc. 39 at 3) (emphasis added).

There is no question that Mr. Cooksey was not a party to the previous lawsuit, although he did participate to a certain extent in that lawsuit. While a nonparty is generally not bound by a judgment in a litigation in which he or she was not a party, there are several exceptions to that rule, *Taylor v. Sturgell*, 128 S.Ct. 2161 (2008), one or more of which may apply in this matter. Nevertheless, claim preclusion is an affirmative defense which must be plead and proven by the defendant. *Taylor*, 128 S.Ct. at 2179. Although the defense of *res judicata* was raised in the answers of both the County and Pleasant Township Trustee defendants, it was not argued as a basis for dismissal of Mr. Cooksey's lawsuit. Since defendants have the burden of proving all of the elements justifying nonparty preclusion, *Taylor*, 128 S.Ct. at 2180, the Court declines to address this issue, though it harbors serious concerns of tactical maneuvering in this litigation (and possibly future actions by other Fields/Cooksey family members) to relitigate the claims previously lost by Ms. Fields.

## IX. Defendant Pleasant Township Trustees' motion for judgment on the pleadings should be granted.

The Pleasant Township Trustees seek judgment on the pleadings or, in the alternative, summary judgment based on qualified or statutory immunity, and/or dismissal, pursuant to abstention, of all of plaintiff's claims against them. (Doc. 45). Plaintiff has not filed a memorandum in opposition to this motion.

Mr. Cooksey's claims against the Pleasant Township Trustees are barred by the statute of

35

limitations and should be dismissed. Plaintiff alleges a conspiracy and "treason" on the part of the

Pleasant Township Trustees. (Doc. 1 at 15-17). The complaint alleges that the Trustees became

involved in the boundary dispute between the McElroys and the Fields/Cooksey family in January

2003 when they were contacted by the McElroys about a "fence problem." (Doc. 1 at 15-16). A

series of letters and meetings between the Trustees and the Fields/Cooksey family ensued. In

March 2003, plaintiff's property was bulldozed by John Purdy who allegedly told someone in the

Fields/Cooksey family that "the Trustees and the people that hired me said I could go over as

much as I wanted (out from property line into Plaintiffs 12-37 feet)." (Doc. 1 at 16). The

bulldozing caused flooding on plaintiff's property. In August 2004, plaintiff was made to walk

the property line with the McElroys at the direction of the Prosecutor "on behalf of the Pleasant

Township Trustees." (Doc. 1 at 17). In April 2005, a fence was built between the two properties,

which the "victims" were required to pay for. (Doc. 1 at 17).

Plaintiff's claims against the Pleasant Township Trustees are barred by the two-year

statute of limitations applicable to his civil rights claims under §§1983 and 1985, *see Tolbert,* 172

F.3d at 939; *Harris v. Board of Educ.*, 798 F. Supp. 1331, 1345 (S.D. Ohio 1992)(and cases cited

therein) (section 1985), and the one-year statute of limitations applicable to his Section 1986

claim. *See Harris,* 725 F.2d at 375. Plaintiff's cause of action against the Pleasant Township

Trustees accrued in March 2003, when his property was damaged by bulldozing allegedly

occurring at the direction of the Trustees. The statute of limitations for plaintiff's § 1986 action

expired one year later in March 2004. The limitations period for his §§ 1983 and 1985 claims

expired two years later in March 2005. Plaintiff's complaint, which was filed in July 2007, was

therefore untimely.

36

Even if the Court were to construe plaintiff's cause of action as accruing as late as April 2005, when the fence was built between plaintiff's and the McElroy's property[11], his complaint filed on July 26, 2007 would be untimely.

Plaintiff's complaint does not allege facts showing a continuing violation to extend the limitations period. Plaintiff fails to allege facts showing any further wrongful conduct or actions on the part of the Trustees occurring after April 2005 which allegedly violated his rights. *Tolbert*, 172 F.3d at 940. Accordingly, plaintiff's claims against the Pleasant Township Trustees do not constitute a continuing violation, are barred by the applicable statute of limitations, and should be dismissed.

Because the Court recommends dismissal of the claims against the Pleasant Township Trustees as barred by the statute of limitations, the Court declines to reach the alternate arguments for dismissal raised by these defendants.

**X. Defendant Scott Gusweiller's motion to dismiss should be granted.**

Plaintiff's complaint against Scott Gusweiller, the McElroy's attorney, alleges that Mr. Gusweiller sent the Fields/Cooksey family a letter advising them not to interfere with his clients survey of the property, and filed an action for an injunction on behalf of his clients concerning raw sewage draining onto his client's property from plaintiff's property.

As a lawyer representing a client, Mr. Gusweiller was not a state actor within the meaning of § 1983. *See Polk County v. Dodson*, 454 U.S. 312 (1981) (holding that public defender does not act under color of state law for purposes of § 1983); *McCord v. Bailey*, 636 F.2d 606, 613 (D.C. Cir. 1979) (applying *Polk County* to retained criminal lawyers). *See also Catz v. Chalker*,

---

[11]This is the last date alleging involvement of the Trustees. (Doc. 1 at 17).

142 F.3d 279, 289 (6th Cir. 1998) (former wife's attorneys in divorce case were not "state actors"). Therefore, plaintiff's complaint fails to state a claim for relief under section 1983 against defendant Gusweiller.

The Court can discern no other cause of action against Mr. Gusweiller based on the allegations of the complaint. Accordingly, defendant Gusweiller's motion to dismiss should be granted.

## XI. Plaintiff's complaint fails to state a claim for relief in several respects.

To the extent the District Judge declines to adopt any of the above recommendations, the undersigned nevertheless recommends that several of plaintiff's claims be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff's complaint fails to state a claim for relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (hereinafter RICO). Section 1964 of Title 18 provides civil remedies to those persons injured in their business or property by the activities proscribed by 18 U.S.C. § 1962. To state a civil cause of action under RICO, the plaintiff must allege 1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000). Plaintiff's complaint fails to allege facts establishing an enterprise under 18 U.S.C. §§ 1961(4) and 1962(c), which requires a showing that the defendants function as a "continuing unit," or that the enterprise existed "separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Nor does the complaint allege facts demonstrating the defendants

engaged in a pattern of racketeering activity. "[T]he pattern requirement is satisfied by showing (1) a relationship between the predicate acts and (2) the threat of continued activity." *Saglioccolo v. Eagle Insurance Co.*, 112 F.3d 226, 229 (6th Cir. 1997) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). Plaintiff has failed to allege facts showing the element of continuity essential to a viable RICO claim. *See H.J., Inc.*, 492 U.S. at 242-43 (explaining that the continuity requirement can be established either by "a specific threat of repetition [of the predicates act] extending indefinitely into the future," or by "showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business"). Accordingly, plaintiff's RICO claim should be dismissed.

To the extent plaintiff alleges claims under the federal criminal statutes, 18 U.S.C. §§ 2, 3, 4,[12] his claims must be dismissed. As a private citizen, Mr. Cooksey is without authority to initiate a federal prosecution against the defendants for any allegedly unlawful acts. *See Williams v. Luttrell,* 99 Fed. Appx. 705, 707 (6th Cir. 2004); *Saro v. Brown,* 11 Fed. Appx. 387, 388 (6th Cir. 2001). Nor does plaintiff have a private civil cause of action under the criminal statutes cited. *See Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir. 1989); *Leach v. Manning,* 105 F. Supp.2d 707, 717 (E.D. Mich. 2000); *Ibn-Duriya v. Curry*, 2007 WL 1191715, *2 (W.D. Ky. 2007). *See also Panley v. Webster,* 816 F. Supp. 553, 559 (W.D. Mo. 1993); *U.S. ex rel. Farmer v. Kaufman,* 750 F. Supp. 106, 108 (S.D.N.Y. 1990); *Lamont v. Haig*, 539 F. Supp. 552, 558 (D.S.D. 1982).

Plaintiff's complaint also fails to state a claim for relief under 42 U.S.C. §§ 241 and 242. These statutes pertain to the United States Department of Health and Human Services and do not

---

[12]Plaintiff also cites to 18 U.S.C. §§ 1985 and 1986. These statutes are non-existent. Assuming he intended to bring claims under 42 U.S.C. §§ 1985 and 1986, these claims are barred by the statute of limitations as discussed above.

apply in plaintiff's case. To the extent plaintiff may have intended to bring claims under 18

U.S.C. §§ 241 and 242, two provisions of the federal criminal code proscribing the violation of an

individual's civil rights, these statutes do not provide a private cause of action or basis for civil

liability. *See U.S. v. Oguaju*, 76 Fed. Appx. 579 (6th Cir. July 9, 2003), 2003 WL 21580657, * 2;

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Cok v. Cosentino,*

876 F.2d 1, 2 (1st Cir. 1989); *Newcomb v. Ingle,* 827 F.2d 675, 676 n. 1 (10th Cir. 1987); *Aldabe*

*v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).

Nor does plaintiff have a cause of action for "domestic terrorism" or "treason" under the

facts alleged in this case. The Patriot Act defines "domestic terrorism" to include activities that-

"(A) involve acts dangerous to human life that are a violation of the criminal laws of the United

States or of any State; (B) appear to be intended-(i) to intimidate or coerce a civilian population;

(ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the

conduct of a government by mass destruction, assassination, or kidnaping; and (C) occur primarily

within the territorial jurisdiction of the United States." 18 U.S.C. § 2331(5). Plaintiff has failed to

cite and the Court has been unable to find any cases applying the Patriot Act to circumstances

similar to Mr. Cooksey's. Nor is there case law or a basis supporting the existence of a private

cause of action for plaintiff's claim of treason. *See Okoro v. Krueger*, 2007 WL 3333476, 11

(E.D. Mich. 2007); *Irving v. Lorson*, Case No. 2:02-cv-823 (S.D. Ohio 2002) (Sargus, J.), 2002

WL 31844685.

Finally, plaintiff's complaint fails to state a claim for conspiracy under § 1983. A civil

conspiracy is an agreement between two or more people to injure another individual by unlawful

action. *See Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267

(1997). To state a claim for conspiracy to violate a right protected by § 1983, plaintiff must allege facts showing a single plan existed, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to him. *Id.* In addition, plaintiff must allege not only an agreement by defendants to violate plaintiff's constitutional rights, but also an actual deprivation of a constitutional right. *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir. 1990); *Farrar v. Cain*, 756 F.2d 1148, 1151 (5th Cir. 1985); *Landrigan v. City of Warwick*, 628 F.2d 736, 742-43 (1st Cir. 1980). To plead and prove one without the other is insufficient. *Id.* "[T]he essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." *Dixon*, 898 F.2d at 1449. "If a plaintiff can prove a constitutional deprivation, the conspiracy allegation allows the plaintiff to impute liability onto multiple defendants if the deprivation was performed during the course of the conspiracy." *Spurlock v. Whitley*, 971 F. Supp. 1166, 1178 (M.D. Tenn. 1997) (citing *Dixon v. City of Lawton, Oklahoma,* 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990); *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir. 1984); *Rojicek v. Community Consolidated School District 15,* 888 F. Supp. 878, 887 (N.D. Ill. 1995)). *Cf. Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003) (arrestee failed to establish § 1983 civil conspiracy claim absent a showing of the particular constitutional rights violated and evidence that defendants acted in concert in violating such rights).

In this case, plaintiff has failed to allege facts showing the defendants had a single plan to deprive him of his civil rights or that defendants shared in such an objective. Nor, as explained above in Section VII, does plaintiff's complaint allege facts showing an actual deprivation of a constitutional right. *Dixon*, 898 F.2d at 1449. His conclusory allegations that defendants acted "in furtherance of the conspiracy" are insufficient to state a claim for relief under § 1983. *See*

41

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987).

## XII. Plaintiff's motions for default judgment, for immediate statutory injunction, and for hearing should be denied.

On August 4, 2008, plaintiff filed a motion for default judgment (Doc. 48) in this matter. Rule 55, Fed. R. Civ. P., provides for the entry of default against a party who fails to plead or otherwise defend as provided for under the Civil Rules. Each of the defendants in this case has either answered the complaint or filed a dispositive motion directed at the complaint. None of the defendants has failed to plead or other defend this matter. Accordingly, plaintiff's motion for default judgment should be denied.

Plaintiff has also moved for an immediate statutory injunction and for hearing. (Docs. 30, 31, 32, 47). While the motions are difficult to understand, it appears that Mr. Cooksey seeks to enjoin state court proceedings currently pending against his sister, Marcia Fields, stemming from her arrest on February 2, 2008 for criminal trespass and criminal mischief. Marcia Fields is not a party to this federal court action and Mr. Cooksey is without standing to request an injunction on her behalf. In any event, the Court should deny the motion because the Court is precluded from adjudicating Ms. Fields' claims under the abstention doctrine formulated in *Younger v. Harris,* 401 U.S. 37 (1971), because the federal courts may not interfere with pending state criminal proceedings in order to entertain constitutional challenges to the state proceedings absent extraordinary circumstances. *Id.*

To the extent Mr. Cooksey may be seeking an injunction against the defendants so as to prevent any further action against him or any member of the Fields/Cooksey family, he has failed to show he has a substantial likelihood of success on the merits of his claims for the reasons set

42

forth in the body of this Report and Recommendation. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

Accordingly, plaintiff's motions for an immediate statutory injunction and for hearing (Docs. 30, 31, 32, 47) should be denied.

## XIII. Defendants' motions for sanctions should be granted.

Defendants Judges Corbin and Zachman and the Brown County defendants seek sanctions against plaintiff pursuant to Rule 11, Fed. R. Civ. P. (Docs. 34, 46). Plaintiff has not filed a memorandum in opposition to the motions for sanctions.[13]

Rule 11 states that a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A). The "safe harbor" provision of Rule 11 is intended to "reduce Rule 11's volume, formalize appropriate due process considerations of sanctions litigation, and diminish the rule's chilling effect." *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997), *cert. denied*, 522 U.S. 1046 (1998). Defendants have complied with the safe harbor provision. (Doc. 34, Exh. A; Doc. 46, Exh. A). Therefore, the Court shall address the merits of the motions.

Pursuant to Fed. R. Civ. R. 11(a), a pro se litigant must sign every pleading, written motion, and other paper submitted to the Court for filing. Such signature constitutes a certificate by the pro se litigant that "to the best of [his] knowledge, information, and belief, formed after an

---

[13]To the extent Document 39 may be construed as a memorandum in opposition, plaintiff's "argument" concerning sanctions addresses Rule 37 sanctions for failure to make discovery, which is not at issue in this case and non-responsive to the issues raised in the Rule 11 motions for sanctions. (Doc. 39 at 2).

inquiry reasonable under the circumstances," such pleading, motion, or paper "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(1), (2). The Court may impose appropriate sanctions against a pro se litigant for his violation of Rule 11. *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 548 (1991) (Rule 11 "speaks of attorneys and parties in a single breath and applies to them a single standard."); *Spurlock v. Demby*, 48 F.3d 1219 (6th Cir. 1995)(unpublished), 1995 W.L. 89003, at * 2 (Rule 11 does not provide a different standard for attorneys and non-attorneys). *See also Doyle v. United States*, 817 F.2d 1235 (5th Cir.), *cert. denied*, 484 U.S. 854 (1987). "In this Circuit, the test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was 'reasonable under the circumstances.'"*Salkil v. Mount Sterling Township Police Dept.*, 458 F.3d 520, 528 (6th Cir. 2006) (quoting in part *Ridder v. City of Springfield*, 109 F.3d 288, 293, 298 (6th Cir. 1997)).

In determining the propriety of Rule 11 sanctions, the Court should consider the party's ability to pay, the degree of bad faith or want of diligence, the costs resulting from the party's inappropriate conduct, mitigating conduct, if any, and that amount necessary and effective to bring about deterrence under all the particular circumstances. *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419-20 (6th Cir. 1992). Deterrence is the paramount objective of Rule 11. *Id.*

Assessing these factors, the Court finds the degree of bad faith on the part of plaintiff to be not insubstantial. As noted above, Mr. Cooksey filed virtually the same complaint as that filed by

44

his sister, Marcia Fields. Mr. Cooksey was clearly aware of the action filed by his sister as he actively participated in a settlement conference before the undersigned Magistrate Judge in that case. The factual allegations of Mr. Cooksey's complaint are in large part taken verbatim from the complaint filed by Ms. Fields. For example, Mr. Cooksey's complaint includes the Brown County Commissioners as defendants, but like his sister's earlier complaint, omits any allegations pertaining to the Commissioners. Despite the *Fields* Court's dismissal of the complaint against the Commissioners because of the complete lack of any allegations against the Commissioners, Mr. Cooksey's complaint repeats the same fatal flaw. Mr. Cooksey also reveals his unreasonable duplication of the complaint by the fact that even though the Brown County General Health District is not a named defendant in his case, Mr. Cooksey repeats the allegations made against this defendant as in the *Fields* complaint. Ms. Fields named the Brown County Health District as a party in her case, but ultimately dismissed that defendant after reaching a negotiated settlement during the December 6, 2006 conference presided over by the undersigned in which Mr. Cooksey participated. Additionally, Mr. Cooksey's attempts at distinguishing his case from that of his sister by identifying himself as an additional "victim/witness" and by raising additional claims for treason, domestic terrorism, and violations of federal criminal law do not change the sum and substance of the underlying facts and circumstances giving rise to these lawsuits.

Importantly, the Court in the *Fields* case granted judgment for the judicial and county defendants on the basis of absolute and qualified immunity. Mr. Cooksey was given a copy of Chief Judge Beckwith's decision in *Fields* in conjunction with the Brown County defendants' request to dismiss the claims against them or face a motion for sanctions. (Doc. 46, Exh. A). In addition, Mr. Cooksey was presented with evidence that Judge Corbin was not the judge who

presided over the McElroy trespass action. (Doc. 34, Exh. A). Despite all of these factors, Mr. Cooksey declined to withdraw his claims against the judicial and county defendants. In the face of clear legal precedent against him, based on the identical facts he raises in his complaint, the Court cannot say Mr. Cooksey actions to continue in this litigation were objectively reasonable under the circumstances. *See Mayhew v. Lytle*, 41 Fed. Appx. 764, 767 (6th Cir. 2002), 2002 WL 1628290, *2. Even though he is proceeding pro se, Mr. Cooksey was on notice that the claims against the judicial and county defendants were without merit. Mr. Cooksey's complete disregard of the Court's previous rulings in the *Fields* case demonstrates his bad faith in this matter.

In addition, the cost of plaintiff's actions to the defendants is high. Both the judicial and county defendants have been forced to defend the same claims they successfully defended in the *Fields* case, claims the *Fields* Court found meritless.

Rule 11's ultimate goal of deterrence will be sufficiently advanced in the present case by imposing sanctions in this case. According to Mr. Cooksey, other Fields/Cooksey family members are preparing to file their own lawsuits based on the same set of facts alleged by Mr. Cooksey and Ms. Fields. (Doc. 39 at 3). Rule 11 sanctions in this case will deter additional baseless claims in this Court by Mr. Cooksey and other Fields/Cooksey family members.

For these reasons, defendants' motions for Rule 11 sanctions should be granted. Because the Court is without any information concerning Mr. Cooksey's ability to pay an award of sanctions, as well as the amount necessary and effective to bring about deterrence under all the particular circumstances, if this recommendation is adopted, the Court should order additional briefing on the issue of the amount of sanctions to be imposed.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motions to dismiss the amended complaint (Docs. 35, 37, 43) and motion to strike the unauthenticated court records, police reports and other documents filed by plaintiff in support of plaintiff's amendment of complaint and answer to defendants (Doc. 40) be granted.

2. The Ohio defendants' motion to dismiss (Doc. 23) be granted.

3. The Federal defendant's motion to dismiss (Doc. 27) be granted.

4. The judicial defendants' motion to dismiss (Doc. 28) be granted.

5. The county defendants' motion to dismiss (Doc. 41) be granted.

6. Defendant Pleasant Township Trustees' motion for judgment on the pleadings (Doc. 45) be granted.

7. Defendant Scott Gusweiller's motion to dismiss (Doc. 22) be granted.

8. Plaintiff's claims set forth in section XI be dismissed.

9. Plaintiff's motions for default judgment (Doc. 48) be denied.

10. Plaintiff's motions for immediate statutory injunction and for hearing (Docs. 30, 31, 32, 47) be denied.

11. Defendants' motions for sanctions under Rule 11 (Docs. 34, 46) be granted.

12. If the above recommendations are adopted, the only remaining defendants in this matter are Bobby and Ricky McElroy.

Date: 9/4/08

Timothy S. Hogan
United States Magistrate Judge

47

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

OTHEL L. COOKSEY, JR.,                          Case No. 1:07-cv-581
     Plaintiff

    vs                                              (Barrett, J.; Hogan, M.J.)

BOBBY MCELROY, et al.,

NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within TEN (10) DAYS of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within TEN DAYS after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

48

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X     ☐ Agent   ☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Othel Cooksey, Jr.<br>5683 Centerpoint Road<br>Georgetown OH 45121 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br><br>3. Service Type<br>☑ Certified Mail    ☐ Express Mail<br>☐ Registered    ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)    ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7007 0710 0000 8130 4990 |

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

1:07cv581 (Doc. 59)