# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Othel Cooksey, Jr.,
        Plaintiff

vs                                        Case No. C-1-07-581
                                             (Barrett, J.)

Bobby McElroy, *et. al.*,
        Defendants                          **ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docs. 65). To date, Plaintiff has not filed a response to Defendants' motion.

## PROCEDURAL BACKGROUND

Plaintiff Othel L. Cooksey, Jr. resides at 5683 Centerpoint Road in Georgetown, Ohio. On July 26, 2007, he filed this pro se civil action against Defendants Bobby McElroy, Rickey McElroy, Scott T. Gusweiller, the Pleasant Township, Ohio Trustees, the Brown County, Ohio Sheriff and Brown County Deputy John Doe, the Office of the Brown County Prosecutor, Brown County, Ohio and the Brown County Commissioners, Judge Alan Corbin, Judge Thomas Zachman, the State of Ohio, the Ohio Department of Health, and the United States Justice Department. Plaintiff's Complaint alleges factual allegations that are virtually identical to a complaint filed by his sister, Marcia Fields, who also resides at 5683 Centerpoint Road in Georgetown. *See Marcia Fields v. Sheriff Deputy John Doe*, Case No. 1:06-cv-668 (S.D. Ohio)(Doc. 2). Both complaints allege that county, state, and federal officials failed to adequately investigate and take appropriate action in response to a series of racially charged incidents involving Rickey and Bobby McElroy, the Fields/Cooksey's next door neighbors.

In *Fields v. Doe*, Case No. 1:06-cv-668, a hearing on a motion for preliminary injunction and settlement conference were held before the Magistrate Judge on December 6, 2006. (Case No. 1:06-cv-668, Doc. 23). Ms. Fields, Plaintiff and Dora Jean Cooksey, their mother, were present and participated at the hearing and in the conference. Following that conference, Marcia Fields voluntarily dismissed the Brown County Health District and its agents and all claims against these defendants after settling the issues arising from Brown County's attempt to condemn the property at 5683 Centerpoint Road based on allegations concerning the septic system. (Case No. 1:06-cv-668, Doc. 31). A Court Order following that conference also noted that Ms. Fields "and the Cooksey/Fields Family also agree to hold harmless the Brown County Health Department/Brown County Health District and its Advisor Mr. Stephen L. Dick, Jr. from any claims for damages arising or growing out of the construction of improvements to the septic system on the Cooksey/Fields property, located at 5683 Centerpoint Road, Georgetown, Ohio 45121." (Case No. 1:06-cv-668, Doc. 31). Thereafter, by Order dated March 22, 2007, the Court

granted the motions to dismiss of defendants Ohio Department of Health, State of Ohio, Brown County Common Pleas Court Judge Corbin (sued as "John Doe"), and the Brown County Court. (Case No. 1:06-cv-668, Doc. 37). On September 4, 2007, the Court denied Ms. Fields' motion for summary judgment; granted the motion to dismiss of defendants Brown County Sheriff's Office, Brown County Prosecuting Attorney's Office, and Brown County Commissioners; and granted the motion for summary judgment of defendant Pleasant Township Trustees. (Case No. 1:06-cv-668, Doc. 49). The Court further dismissed *sua sponte* all claims against the federal defendants, including an unknown FBI agent, the Federal Bureau of Investigation, and the Department of Justice. Id. Ms. Fields filed a notice of appeal to the Sixth Circuit Court of Appeals. On December 11, 2008, the Sixth Circuit affirmed the district court's decision dismissing Ms. Fields' Complaint. (*See* Doc. 59).

In the instant case, Plaintiff's Complaint names the same county, state, and federal defendants as his sister's complaint[1] and names as additional defendants Bobby and Rickey McElroy and Scott Gusweiller, the McElroy's one-time attorney. Plaintiff, an African American, presents claims arising from the same history of alleged racial conflicts and threats by next-door neighbors Bobby and Rickey McElroy over an ongoing boundary dispute. Mr. Cooksey asserts this case involves conspiracy, criminal activity, corruption, domestic terrorism and treason. (Doc. 1 at 6). On September 24, 2008, the Court adopted the Report and Recommendation of the Magistrate Judge dismissing Defendants Gusweiller, Pleasant Township Trustees, Brown County Sheriff, Office of Brown County Prosecutor, John Does, County of Brown, Brown County Commissioners, Alan Corbin, Thomas Zachman, State of Ohio, Ohio Department of Health, and the Justice Department, leaving Defendants Bobby and Rickey McElroy as the only remaining Defendants. (*See* Doc. 62).

## FACTUAL BACKGROUND

The Complaint alleges the following facts. On December 7, 2002, Marcia Fields and Othel Cooksey were held at gunpoint on their property by a group of white men, including Rickey and Bobby McElroy. After this incident, Plaintiff alleges that he stood beside his sister while Ms. Fields called the Brown County Sheriff's Office to report the incident. Sheriff deputies responded to the call but took no statement from Ms. Fields or Plaintiff and advised them that the incident should be reported to the Game Warden. Plaintiff alleges that he, his sister, and his mother, Dora Jean Cooksey, made several contacts with the Brown County Sheriff's Office during the month of December 2002, but the Sheriff's Office failed to adequately investigate the incident or take appropriate action in response thereto. The Complaint alleges "[t]here was no statement per the sheriff (sic) office on file from me. In fact, there were no statements/interviews from the prosecutor's office, FBI, or Justice Department. I've never been interviewed by the Sheriff's office or FBI or Justice Department all though (sic) each says they investigated this crime." (Doc. 1 at 5-6).

---

[1] Plaintiff's Complaint does not, however, name the Brown County General Health District or the Federal Bureau of Investigation as defendants.

The Complaint alleges that in January 2003, the McElroys met with the Pleasant Township Trustees about a fence problem between the McElroys and the Fields/Cooksey family. The Trustees said a boundary line should be checked by the surveyor before a fence could be built. The Complaint alleges that neither Plaintiff nor his family received notification about this.

The Complaint further alleges that on January 12, 2003, two men, including Rick McElroy, returned to the Fields/Cooksey property and again threatened his family. When Ms. Fields called the 911 operator, she was told that Mr. McElroy was permitted on the property.

The following day, Plaintiff and his family members met with Prosecutor Thomas Grennan about the December 7, 2002 and January 12, 2003 incidents and were told it was a "boundary issue."

On January 17, 2003, someone in the Fields/Cooksey family received a letter from the McElroy's attorney, Scott Gusweiller, "stating that his clients the McElroy[s] had been looking for 'pins' on December 7, 2002 and January 12, 2003, and that they could come down to the property and if we interfered they would involve the Sheriff's department." (Doc. 1 at 11).

The Complaint states that on January 18, 2003, Plaintiff and his family sent a letter to the Pleasant Township Trustees in response to the "threatening" letter from the McElroy's attorney.

On January 24, 2003, the County Prosecutor informed the Fields/Cooksey family that Mr. McElroy would be charged with criminal trespassing, but not more serious charges relating to the December 2002 incident.

On February 4, 2003, Rick McElroy met with the Pleasant Township Trustees to inform them he had the fence line surveyed and hired John Purdy to bull doze the line. Plaintiff states he and his family were not notified of this action.

On March 10, 2003, two of the men involved in the previous incidents bull dozed a part of Plaintiff's property. The County Sheriff was contacted and filed a report for criminal trespass with damage. The County Prosecutor was notified about the incident and informed the Field/Cooksey family there was nothing they could do about it.

In April 2003, in preparation for the criminal trespass trial, Ms. Fields was allegedly told by the assistant county prosecutor to limit her testimony and not to testify about the other incidents which occurred subsequent to the December 2002 incident.

The Complaint alleges that the prosecutor's office made no mention of Plaintiff as a "second victim" to the news media which reported on the December 2002 incident. (Doc. 1 at 12).

Plaintiff states that on May 8, 2003, he received a letter from the Pleasant Township

Trustees notifying him of a fence line issue.[2]  Plaintiff states this was the first official notification he received.  Plaintiff also states that there was property damage from the bull dozing and subsequent flooding of the Fields/Cooksey property.

On May 14, 2003, Plaintiff received an official notice from the Pleasant Township Trustees and the Prosecutor "about a fraudulent fence line issue" which included a request "to walk the property line with the gunmen who held you at gunpoint." (Doc. 1 at 12).  The Complaint states, "We refused in writing." (Doc. 1 at 12).

In May 2003, the Prosecutor's office ordered a survey of the incident site and requested Plaintiff to mark the location of the perpetrators.  Plaintiff states he was never contacted by the prosecutor's office for evidence "as a victim and witness." (Doc. 1 at 12).

On June 14, 2003, the Prosecutor tried "to force a walk of Plaintiff with Trustee's and McElroy's." (Doc. 1 at 13).

On August 12 and 13, 2003, the criminal trespassing trial of Rickey McElroy was held.  Plaintiff alleges that the trial occurred in the Brown County Court (of Common Pleas) before Judge John Doe.   The Complaint alleges that the judge refused to serve a warrant upon the McElroys for the December 2002 incident; allowed racial slurs to be used freely in the courtroom; allowed the defense attorney to be a witness without being sworn in; allowed the defense attorney to lead witnesses; threatened Plaintiff with a mistrial; and allowed members of jury to wink at the Defendant openly.  Plaintiff further alleges that the judge permitted the defense attorney to play a 911 call for the jury that was not authentic and was garbled.  Plaintiff also alleges that the Prosecutor failed to follow up with witnesses during the trial.

The Complaint also alleges that on August 24, 2003, two persons ran ATVs at Plaintiff.[3]  The Sheriff's office was called.  The person who initially took the call refused to take a report from Plaintiff until a supervisor was called.

Plaintiff alleges that in December 2003, hunters on his property shot over Plaintiff and his sister's head.  The Sheriff's office was called and a report taken.  A December 6, 2003 report by Brown County Sheriff Deputy Sininger stated that a neighbor reported Ms. Fields  was walking through woods and making noise in an attempt to scare deer away from hunters.  The  report states that the deputy suspected Ms. Fields of using alcohol and drugs.

---

[2] The Complaint states, "May 8th, 2003 (letter dated) sent to Plaintiff-First official notification of any 'fence-line' issue from the Pleasant Township Trustee's." (Doc. 1 at 16).  This allegation is identical to one contained in Ms. Fields' complaint in which she identifies herself as the "Plaintiff," the person to whom the letter was sent.  (Case No. 1:06-cv-668, Doc. 2 at 17).  This is one of several examples where Plaintiff's Complaint repeats verbatim the allegations of Ms. Fields' complaint.

[3] Again, both the Fields complaint and Plaintiff's  Complaint contain identical allegations where both claim to be the sole victim/plaintiff in the alleged action.

In May 2004, racial slurs were carved into a picnic table at Plaintiff's mother's place of employment. This was reported to the County Sheriff's department and the FBI.

On July 24, 2004, Plaintiff, his sister, and mother were allegedly confronted by the McElroys when walking on their own property. They were accused of trespassing on the McElroy's property and the Sheriff's Department was called. The Sheriff's Deputy appeared to side with the McElroys over the incident and intimated in his report that the Fields/Cooksey family were trying to make the property dispute into "a racial thing." (Doc. 1 at 10).

Plaintiff states that on August 6, 2004, Rickey McElroy drove a tractor onto Plaintiff's property towards Plaintiff's mother. The Complaint states the Sheriff's deputy failed to compile a report about this incident.

On August 21, 2004, the Prosecutor, on behalf of the Pleasant Township Trustees, wrote a "threatening" letter to Plaintiff and his family about a proceeding with a partition fence. That same day, while putting up a fence on Plaintiff's property, someone fired gunshots from the roadway. The Sheriff's deputy reported that the shooter and direction of the shots were unknown. The following day, a neighboring property owner informed Plaintiff and his family that he was going to put a rifle range in front of Plaintiff's home.

Plaintiff states that in September 2004, the Prosecutor, Trustees and McElroys met and decided to put up a fence without Plaintiff or his family's knowledge.

On October 19, 2004, the Trustees and Prosecutor asked Plaintiff for a meeting concerning the fence.

The Complaint states that on November 2, 2004, a bullet came through Plaintiff's kitchen window. Sheriff's deputies responded, but stated that it was "not connected with all that been happening." (Doc. 1 at 10). The Complaint alleges that neither the Sheriff's Office nor Prosecutor's Office reported this incident to the news media and that "[t]he news is silent about this–TREASONOUS ACTS." (Doc. 1 at 14).

On February 1, 2005, the Prosecutor and Pleasant Township Trustees decided to go forward with the partition fence.

In March 2005, Plaintiff filed a lawsuit for damages to the Fields/Cooksey property which occurred in March 2003.[4]

On March 24, 2005, the McElroys and others parked in front of Plaintiff's house while drinking and yelling. Plaintiff notified Deputy Dunn.

---

[4] The Complaint does not identify the forum in which the lawsuit was filed.

In April 2005, Plaintiff observed three men in fatigues in Plaintiff's creek at night. That same month, a fence was built between the McElroy's and Plaintiff's properties "per McElroy's, Prosecutor and Trustee" and "victims pay for a Treasonous execution." (Doc. 1 at 17). In addition, an agent from the Brown County General Health District came to Plaintiff's home concerning a sump pump pipe.

On June 6, 2005, Sheriff's Deputy Hubbard and Stephen Dicks of the Brown County Health Board arrived at Plaintiff's property with a search warrant obtained through the Prosecutor's office for the testing of Plaintiff's septic tank. They asked Plaintiff's mother and sister to sign the warrant, but they refused.

On June 28, 2005 and August 5, 2005, Plaintiff received a notice of violation from the Health Board concerning his sewage disposal system.

On August 25, 2005, Scott Gusweiller, the attorney for the McElroys, filed for an injunction over raw sewage draining onto his client's property from Plaintiff's property.

On August 26, 2005, Plaintiff's sister met with Assistant Attorney General John Doe about the events described above. In September 2005, the Justice Department closed the case for "insufficient evidence or legal authority to support a violation of the federal criminal civil rights statutes." (Doc. 1 at 19).

On October 21, 2005, Sheriff Dwayne Wenninger arrived at Plaintiff's home with the Health Board Commissioner and threatened to condemn plaintiff's home. On October 26, 2005, Deputy Hubbard and Stephen Dicks of the Health Board entered Plaintiff's property through a closed gate and threw a letter on the ground informing Plaintiff that his home had been condemned and that Plaintiff and his family had 10 days to vacate the premises.

In November 2005, Plaintiff met with the County Health Department and Prosecutor and came to an agreement to stop the condemnation proceedings. The Complaint states that the agreement was reached "under threats and pressure of loosing (sic) her home without and legal representation. . . ." (Doc. 1 at 15).

In June 2006, the Brown County General Health District sent a letter about fixing the septic system.

In July 2006, the Prosecutor's office sent a letter to the Fields/Cooksey family threatening the condemnation of their home.

The Complaint states that on "December 6th, 2006 we still had to work out a deal with the same treasonous defendants to stop the condemnation of our home–even though it went against all

Constitutional rights." (Doc. 1 at 15).[5]

Plaintiff filed this federal lawsuit on July 26, 2007. He alleges the foregoing actions violated his rights under federal and state law and seeks relief under Article I, Section 10, Article III, Section (1)(3), Article VI, and Article VII of the Constitution; the First, Fourth, Fifth, Ninth, Thirteenth and Fourteenth Amendments of the United States Constitution; 18 U.S.C. §§ 2, 3, 4, 201, 1621, 1985, 1986, 2331 and 42 U.S.C. §§ 241, 242. (Doc. 1 at 23-25). Plaintiff alleges that Defendants' actions amount to domestic terrorism and treason against the United States. (Doc. 1 at 26). As relief, Plaintiff seeks an injunction against Defendants Brown County, Bobby and Rickey McElroy, Scott Gusweiller, and their families and agents; monetary compensation; and "[e]nforcement of State laws and Constitutional laws." (Doc. 1 at 34-36).

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish

---

[5] December 6, 2006 is the date that the undersigned held a settlement conference in *Fields v. Doe*, Case No. 1:06-cv-668 in an attempt to resolve the condemnation issue with the County Board of Health.

that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Defendants argue that Plaintiff's Complaint[6] is devoid of any facts or allegations that Defendants deprived Plaintiff of any rights secured by the Constitution or by law. Defendants point out that there are no credible allegations that Defendants were acting under the color of law. Defendants further argue that Plaintiff's claims for relief are barred by the applicable federal and state statute of limitations.

The statute of limitations for §§ 1983 and 1985 claims in Ohio is two years, as provided in Ohio Rev. Code § 2305.10. *See Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 939 (6th Cir. 1999) (section 1983); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (section 1983); *Harris v. Board of Educ.*, 798 F. Supp. 1331, 1345 (S.D. Ohio 1992) (and cases cited therein) (section 1985). The statute of limitations for § 1986 claims is one year. *Harris v. City of Canton, Ohio*, 725 F.2d 371, 375 n.4 (6th Cir. 1984). The statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of his action. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

In the instant case, Defendants' alleged civil rights violations span the period from December 7, 2002, to August 6, 2004. Plaintiff's Complaint was filed on July 23, 2007, well outside the limitations period for actions under §§ 1983, 1985 and 1986. Thus, Plaintiff's Complaint is time-barred unless the action complained of constitutes a continuing violation that extends the limitation period.

The Sixth Circuit applies a three-part test to determine whether a continuing violation exists. First, the wrongful conduct must continue after the precipitating event; second, the injury must continue to accrue after that event; and, third, further injury must be avoidable if the defendant ceases the wrongful conduct. *Tolbert*, 172 F.3d at 940, citing *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997).

In this case, the allegations against Defendants fail to satisfy this test. The last alleged act

---

[6] On September 24, 2008, the Court adopted the Magistrate Judge's finding that Plaintiff's proposed Amended Complaint was improperly filed and striking the Amended Complaint. (*See* Docs. 59, 62).

of assault or trespass by Defendants occurred on August 6, 2004. Plaintiff fails to allege facts showing any further wrongful conduct or actions on the part of Defendants occurring after August, 2004, which allegedly violated his rights. *Tolbert,* 172 F.3d at 940. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert,* 172 F.3d at 940, quoting *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991). Accordingly, Plaintiff's claims against Defendants do not constitute a continuing violation, are barred by the applicable statute of limitations, and are dismissed.

To the extent Plaintiff is asserting claims for assault and trespass under state law, those claims are, likewise, barred by the applicable statutes of limitation. The statute of limitations under Ohio law for a civil assault action is one year. O.R.C. § 2305.11. As stated previously, the last alleged act of assault on the part of Defendants occurred on August 6, 2004. As the Complaint was filed on July 23, 2007, the alleged assault claims are outside the applicable statute of limitations. Plaintiff's Complaint is time-barred and is, therefore, dismissed.

The statute of limitations under Ohio law for trespassing is four years. Plaintiff's Complaint specifically alleges that Defendants trespassed upon his property on March 14, 2003. (Doc. 1, at p.8). Plaintiff's Complaint, filed on July 23, 2007, is thus time-barred by the applicable statute of limitations.

However, Plaintiff's Complaint alleges two other incidents which, if construed as the basis for a claim of trespass against Defendants, falls within the applicable statute of limitations period. The first incident occurred on July 24, 2004, at which time Plaintiff was cited for trespassing on Defendants' property, but which Plaintiff claims Defendants were actually the trespassers. The second incident occurred on August 6, 2004, when Rickey McElroy allegedly drove a tractor onto Plaintiff's property toward Plaintiff's mother. The Court, having no federal cause of action before it, however, declines to exercise supplemental jurisdiction over these claims. Pursuant to 28 U.S.C. §1367, district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). As the Court has dismissed Plaintiff's claims under §§ 1983, 1985 and 1986, the Court hereby declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Plaintiff's state law claims for assault and trespass against Bobby and Rickey McElroy are hereby dismissed without prejudice.

## IT IS THEREFORE ORDERED THAT

1)   Defendants' Motion for Summary Judgment (Doc. 65) be **GRANTED**. All claims against Defendants Bobby and Rickey McElroy are dismissed WITH PREJUDICE with the exception of Plaintiff's state law claims for assault and trespass which are not barred by the statute of limitations. These claims are dismissed WITHOUT PREJUDICE.

2)      Plaintiff's Complaint be **DISMISSED**.

SO ORDERED.


                                        _____/s/ Michael R. Barrett_____
                                        Michael R. Barrett
                                        United States District Judge